**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Mildred L. CLAUDER, Appellee.**

No. 380.

Court of Civil Appeals of Texas.

Tyler.

July 18, 1968.

Rehearing Denied Sept. 19, 1968.

Underwood, Wilson, Sutton, Heare & Berry, R. A. Wilson, Amarillo, for appellant.

John W. Warner, Pampa, for appellee.

DUNAGAN, Chief Justice.

This is a workmen's compensation suit. Texas Employers' Insurance Association, appellant, brought this suit in the 31st Judicial District Court of Gray County, Texas, to set aside an award of the Industrial Accident Board granting appellee, Mildred L. Clauder, death benefits under the Workmen's Compensation Act. Appellee filed a cross-action on behalf of herself to recover death benefits and on behalf of the estate of her deceased husband, James Louis Clauder, to recover medical expenses incurred. The case was submitted to a jury on special issues. Upon the findings of the jury the court rendered judgment in favor of appellee for recovery of death benefits, funeral expenses and certain medical expenses incurred during her deceased husband's lifetime.

The controlling question as we see it is whether the injuries, which the jury found caused Mr. Clauder's death, were suffered by him in the course of his employment.

On November 22, 1965, James Louis Clauder, received injuries in an automobile collision which resulted in his death on December 10, 1965. Upon the date of his injury, he was employed by Phillips Petroleum Company and was working at Phillips' North Plant located between Pampa and Lefors. The injuries which the jury found to have been the cause of Mr. Clauder's death were received in an automobile collision when the car which he was driving collided with a vehicle being driven by Dale Gallaher, general manager of Windsor Servicing Company, who was in no way associated with Mr. Clauder's employer.

The access roads to Phillips' North Plant are identified in the record as A, B and C. Both Roads A and C intersect Road B. Road A is the most direct route to the north from North Plant to Road B and Road C would be the most direct route to Road B for southward-bound traffic. Road B is shown to be an oil field road leading from the Pampa-Lefors Road to the Lefors-Bowers City Road. Road C is also shown to be an oil field road which runs in front of Phillips' North Plant to the old Wilcox warehouse and which intersects with both the Lefors to Pampa Highway and the Farm-to-Market Road between Lefors and Bowers City. Road A, an oil field road, runs generally north and south between Road B and Road C, intersecting with both.

The property upon which Roads A, B and C traverse is owned by Mrs. Inez Carter. She owned two sections of land of which a small portion, between 20 and 30 acres, Phillips held by surface lease. There were no county road numbers for these roads and no fences along these roads. These roads, as all other oil field roads in that area, were maintained by the county and used by the public generally.

Roads A, B and C were used by anyone with business involving any of the many companies which had leases in the area or with ranchers in the area. In addition to Phillips, several other oil companies had operations in that area. Among them are Sun, Mobil, Texaco, Humble, Tennyco, Sinclair, Cree, Gulf, Cities Service, Baldridge and Dunigan. The employees of these companies used Roads A, B and C as means of access from their respective places of work.

The accident in question occurred approximately one-half mile from North Plant on Road B and approximately fifteen feet north of its intersection with Road A.

Mr. Clauder was a long-time employee of Phillips Petroleum Company and in the month of November, 1965, which was the month of the accident, was working at Phillips' North Plant. He was a combination operator, who is normally a relief man. He relieves for vacations and sick time, and one day a week he relieves when the regular operators have finished their shifts. On the day when he is not serving as an operator, his work will infrequently take him away from the plant, but this will be in a company pickup, on company time, and for a specific task he is directed to perform. On the day he serves as operator, however, his duties are solely at the plant. The plant was surrounded by a fence. There were two drips located perhaps 75 feet beyond the fence, which the operator would reach by walking, but, except for this, the operator's work would be done altogether within the plant fence and he had no duties which would take him away from the plant or involve the use of an automobile.

On the day the accident occurred, Mr. Clauder had worked as an operator, so his work had been altogether at the plant. Upon being relieved by another employee, Mr. Clauder left for home in his own personal car, so, at the time of the accident, he was driving his own personal automobile from Phillips' North Plant, where he was employed, to his home. Phillips did not provide housing at the plant and so employees working at the plant required transportation of some kind to get them to the plant. However, Phillips did not furnish transportation; it did not pay for transportation; and it exercised no control over the means of transportation or the route followed. These were matters which Mr. Clauder determined. Nor was Mr. Clauder paid for the time spent in going to and from the plant. His pay period started and ended at the plant.

At the conclusion of the evidence, appellant presented its motion for directed verdict upon the grounds that there was no issue of fact raised with respect to course of employment and that as a matter of law, under the record made, the injuries and resulting death were not compensable under the Act. Appellant's motion was overruled.

In answer to Special Issue No. 5,[1] the jury found that at the time the accidental injuries received by the deceased occurred, he was acting within the course of his employment for Phillips Petroleum Company. Appellant presented its motion for judgment non obstante veredicto which was, by the trial court, likewise overruled. By appropriate points of error, appellant contends here that as a matter of law the injuries and resulting death of Mr. Clauder were not compensable under the Workmen's Compensation Act and the trial court erred in overruling its motions for directed verdict and for judgment non obstante veredicto. Appellant further contends that the jury's finding in answer to Special Issue No. 5 is so against the overwhelming weight and preponderance of the evidence as to be clearly wrong. Other points of error (unnecessary to decide in view of our holding) relate to the trial court overruling appellant's objections to the court's charge, the exclusion of evidence and the allowance of recovery for medical and hospital expenses incurred during Mr. Clauder's life.

■ It is our view that there is no evidence in the record justifying the submission of Special Issue No. 5, and that the trial court erred in refusing the motion for directed verdict.

Under the Texas Workmen's Compensation Act, the term "injury sustained in

1. "Do you find from a preponderance of the evidence that such accidental injury, if any, previously inquired about, was received by the Deceased in the course of his employment, if any, for the employer, if any, inquired about in No. 1?"

the course of employment," excluding certain exceptions not here relevant, includes "all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere." Section 1, Article 8309, Vernon's Ann. Tex.Civ.St.

Prior to the effective date of the 1957 Amendment to Article 8309,[2] the general rule was well established that an injury incurred in the use of public streets or highways in going to and returning from the place of employment was not a compensable injury because the same was not incurred in the course of employment as required by Article 8309 aforesaid. Certain exceptions to the general rule, however, were recognized. It was held that injuries incurred where the manner of transportation was furnished by the employer, or where the employer paid another to transport the injured employee, or where the employee undertook a special mission at the direction of his employer, or performed a service in furtherance of his employer's business with the express or implied approval of his employer, were sustained "in the course of a workman's employment." American General Insurance Company v. Coleman, 157 Tex. 377, 303 S.W.2d 370 (1957).

In Texas General Indemnity Company v. Bottom, 365 S.W.2d 350 (1963), the Supreme Court in construing the effect of Section 1b, Article 8309, held that by its enactment, the Legislature intended to circumscribe the probative effect that might be given to the means of transportation or the purpose of the journey rather than to enlarge the definition found in Section 1. Accordingly, if the claimant brought himself within the provisions of Section 1b, it was still necessary for him to show that the injuries were of a kind and character that had to do with and originated in the work, business, trade or profession of his employer and were received while he was engaged in or about the furtherance of the affairs or business of the employer. See also Janak v. Texas Employers' Insurance Association, 381 S.W.2d 176 (S.Ct., 1964).

Under the facts disclosed by this record, decedent Clauder was simply en route to his home following the completion of his duties at Phillips' North Plant. As a basis for her claim for fatal benefits in this case, appellee did not attempt to bring her case within any of the provisions of Section 1b, supra, and we are of the opinion that, under the record in this case, the "coming and going" rule applies. Irrespective of the question as to whether the deceased's automobile was on a public highway at the time of the collision resulting in his death, the record shows that it occurred upon a roadway over which the employer did not have possession or an exclusive right to possession to the exclusion of others, and that the same was used by various members of the public who had no connection whatso-

2. "Unless transportation is furnished as a part of the contract of employment or is paid for by the employer, or unless the means of such transportation are under the control of the employer, or unless the employee is directed in his employment to proceed from one place to another place, such transportation shall not be the basis for a claim that an injury occurring during the course of such transportation is sustained in the course of employment. Travel by an employee in the furtherance of the affairs or business of his employer shall not be the ba-

sis for a claim that an injury occurring during the course of such travel is sustained in the course of employment, if said travel is also in furtherance of personal or private affairs of the employee, unless the trip to the place of occurrence of said injury would have been made even had there been no personal or private affairs of the employee to be furthered by said trip, and unless said trip would not have been made had there been no affairs or business of the employer to be furthered by said trip." Effective September 1, 1957.

ever with the deceased's employer. The collision in which the deceased received the fatal injuries was with an individual having no connection or business with Phillips Petroleum Company, the employer. Under the facts established in the record, without dispute, this is a travel case and before a basis for recovery could be shown, appellee had to bring her case within one of the provisions of Section 1b, Article 8309, V.A.T.C.S.

The conclusion we have reached is compelled, in our opinion, by the closely analogous case of Agricultural Insurance Co. v. Dryden, 398 S.W.2d 745 (S.Ct., 1965) in which case Dryden was on his way to work when his automobile overturned following a sudden swerving to avoid hitting a dog. Dryden was a foreman or pusher of a carpenter crew and one of his duties was to transport in his personal automobile from the work site to his home and from his home to the work site certain power tools owned by his employer and used by the carpenters. It was necessary for Dryden to arrive at his work site fifteen or twenty minutes earlier than the crew in order to have the tools unloaded and ready for use by the carpenters at the time they commenced work. On the occasion made the basis of the suit, Dryden was transporting the tools and had left his home, traversing the route he would have used had he not been required to transport the tools. In discussing the effect of Section 1b, Article 8309, the court holds that it follows that an injury occurring during transportation cannot be the basis of a claim that such was sustained in the course of employment, as required by said Section, unless one of the prerequisites enumerated in the first sentence thereof is present. The court held that Section 1b precluded the qualification of Dryden's injury as one sustained in the course of his employment. There is no valid distinction between the *Dryden* case and the one at bar unless it can be said that the case at bar falls under the "access" exception discussed below.

Appellee recognizes that as a general rule, an injury received by an employee while using the public streets and highways in going to and returning from his place of employment is not compensable. But, she urges that another well settled exception to such rule is found in "access" cases. In these cases, a workman who has been injured at a place intended by the employer for use as a means of ingress and egress to and from the actual place of employee's work has been held to have been injured in the course of his employment. The courts have said that these access areas are so closely related to the employer's premises as to be fairly treated as a part thereof. In a long line of cases in Texas, commencing with Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, and recently discussed in Kelty v. Travelers Insurance Company, 391 S.W.2d 558 (Tex.Civ.App., Dallas, 1965, n.r.e.), the courts have recognized and applied the "access doctrine," but it is generally held that in order to authorize a recovery in that type case, it is ordinarily essential that the way traveled should be the only way to and from the work and also that it should not be traveled by the public generally. Moreover, in many of the "access" cases, such as *Kelty,* there is no automobile or vehicular transportation involved. If it can be said that the "access doctrine" would have been applicable to the factual situation here involved, it is clear that the 1957 Amendment operated to circumscribe and restrict the holdings of the prior cases. It is, therefore, our opinion that this case is not one for the application of the "access exception," but, if it were, we believe that Section 1b precludes the qualification of Clauder's injury as one sustained in the course of his employment. See also Meyer v. Western Fire Insurance Company, 425 S.W.2d 628 (S.Ct., 1968).

We have not discussed appellant's point relating to the insufficiency of the evidence to support the jury's finding in answer to Special Issue No. 5, but if this

*point* should be reached, we would hold that the evidence is insufficient to support such finding.

It is our opinion that the trial court erred in overruling appellant's motion for directed verdict and its motion for judgment non obstante veredicto.

The judgment of the trial court is reversed and judgment is rendered for the appellant.